**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**LORI ANN MCHENRY,**

**Plaintiff,**

**vs.**

**Civil Action 2:10-CV-510**
**Judge Watson**
**Magistrate Judge King**

**MICHAEL J. ASTRUE, Commissioner of Social Security,**

**Defendant.**

**REPORT AND RECOMMENDATION**

This is an action institute under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's current application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 11, and the Commissioner's *Memorandum in Opposition*, Doc. No. 16.

In 2000, plaintiff was awarded supplemental security income based on a finding of disability by reason of chronic renal failure. However, those benefits were terminated effective February 25, 2004 in light of plaintiff's successful kidney transplant. See A.R. 57-59. That decision became final after plaintiff failed to appeal the decision.

Plaintiff filed her current application for benefits on May 16, 2004. That application was denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge.

On July 9, 2007, plaintiff appeared at the administrative hearing without counsel and, after having been advised of her rights, expressed her desire to proceed without a representative. A.R. 582-84. Suman Srinivasan also testified as a vocational expert.

In a decision dated January 22, 2008, the administrative law judge declined to reopen the earlier administrative termination of benefits: "There is no new or material evidence that would warrant reopening that determination. Therefore, the only period at issue in this decision is from May 2004, the date of her current Title XVI application." A.R. 20. The administrative law judge went on to find that plaintiff's severe impairments, which consist of history of renal failure with successful transplant; diabetes with polyneuropathy; bilateral plantar fasciitis; situational depression; and history of myocardial infarction in December 2006 secondary to coronary artery disease with successful angioplasty/stent placement, neither meet nor equal a listed impairment. The administrative law judge also found that plaintiff has the residual functional capacity for a reduced range of light work:

> [T]he claimant has the residual functional capacity to: lift up to 20 pounds occasionally and 10 pounds frequently; she must have the option to alternate positions every 15 to 30 minutes; use of foot controls is limited to occasionally; she must avoid climbing ladders, scaffolds or working at unprotected heights; more than occasional stooping, kneeling, crouching or crawling; she is limited to inside work in a temperature-controlled environment; and to low stress jobs not involving inherently stressful or hazardous activities.

A.R. 26. Although this residual functional capacity precluded the performance of plaintiff's past work as a food service manager, the administrative law judge relied on the testimony of the vocational expert to conclude that plaintiff could nevertheless perform work that exists in significant numbers in the national economy, including certain semi-skilled light work to which plaintiff has transferrable skills, as well as certain unskilled light and sedentary jobs. A.R. 32. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. That decision became the

final decision of the Commissioner of Social Security when the Appeals Counsel declined review on January 26, 2010.

In her *Statement of Errors*, plaintiff challenges the administrative law judge's residual functional capacity assessment and argues that the administrative law judge failed to fully develop the record in light of the fact that plaintiff proceeded without representation.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs*., 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff was 45 years of age at the time the administrative law judge issued his decision. She lives with her husband and two teen-

age children. She has a drivers license and drives a short distance to the store three or four days per week. A.R. 588-89. Plaintiff testified that the greatest impediment to her ability to work is her diabetes and associated neuropathy and memory loss. A.R. 591. She sees her treating primary care provider and nephrologist, Jeffrey L. Austen, M.D., every three months. Her kidney transplant was successful, but the medication associated with the transplant either keeps her awake or causes lethargy and dizziness. A.R. 593. She takes Percocet, Neurontin and Cymbalta for the neuropathic pain in her legs. The medication alleviates but does not eliminate the pain. A.R. 594-95. She performs household chores with the assistance of her family. A.R. 598-99. She watches television and enjoys reading and embroidering. A.R. 600. Plaintiff estimated that she can stand no more than 15 minutes, can walk no more than 20 minutes and can sit for no more than 30 minutes before having to get up. A.R. 594-96. She can lift no more than 15 pounds. A.R. 598.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and a residual functional capacity for a reduced range of light work. According to the vocational expert, such a claimant could perform approximately 50,000 semi-skilled light and sedentary jobs in the regional economy, including various clerking and receptionist positions. A.R. 605. Such a claimant could also perform approximately 30,000 light unskilled jobs, such as counter clerk, library aide and office helper. Id.

In February 2004, a state agency physician reviewed the record, noted plaintiff's successful transplant, and opined that plaintiff had the residual functional capacity for light exertion. A.R. 308. *See also* A.R. 382-87. In November 2004, a state agency physician reviewed the record and opined that, throughout an 8-hour day, plaintiff

could lift and carry up to 20 pounds occasionally and 10 pounds frequently. She could stand or walk and could sit about 6 hours. She could use foot controls only occasionally because of her diabetic neuropathy. A.R. 462. She could never climb ladders, ropes or scaffolds, nor could she balance. A.R. 463. She could only occasionally climb stairs, kneel, crouch or crawl. *Id.*

In June 2004, Nicolaas P. Dubbeling, Ph.D., performed a consultative psychological evaluation and concluded that plaintiff's metal status "is negative for significant symptoms of any nature and memory dysfunctioning." A.R. 357.

In July 2004, James N. Spindler, M.S., evaluated plaintiff at the request of the state agency and concluded that, from a psychological standpoint, plaintiff was not "significantly impaired." A.R. 380.

Dr. Austen has been plaintiff's long-term treating physician. In April 2003, Dr. Austen noted that plaintiff's Type I diabetes was well controlled, as was her hypertension. A.R. 255. He also noted leg pain, plantar fasciitis and diabetic nephropathy. *Id*. In May 2004, Dr. Austen's office notes indicate that plaintiff had been placed on an insulin pump, resulting in "much better control." A.R. 488. He instituted a regimen of Neurontin for neuropathy. Id. In July 2005, Dr. Austen commented that plaintiff's blood sugar was high and he increased her medication. A.R. 485. Dr. Austen also recommended that plaintiff "start looking for a job," Id., although he also commented that "the thing that precludes that is her pain." Id. In October 2005, Dr. Austen noted that plaintiff "feels well." A.R. 484. She complained of pain in the sacroiliac joints but rejected Dr. Austen's suggestion of injections. Id. In March 2006, Dr. Austen characterized plaintiff's blood sugars as "awful still." A.R. 483. He hoped that, as plaintiff returned to work, her weight and blood sugars would decrease. Id. In September 2006, Dr.

Austen noted that plaintiff was no longer working, but attributed that fact to family dynamics. A.R. 553. According to Dr. Austen, plaintiff's blood sugars were "fair." Id. He noted that plaintiff was "walking everywhere." Id. On September 25, 2006, Dr. Austen characterized plaintiff's diabetes as under "good control." A.R. 552.

In December 2006, plaintiff was hospitalized for a subendocardial myocardial infarction. A.R. 528-48. She underwent a PTCA of the right coronary, LAD and diagonal branch and was discharged two days later in satisfactory condition.

During an April 2007 office visit, Dr. Austen noted that he had rejected plaintiff's request for a recommendation of disability: "For the most part, I am opposed to disability and that is just my philosophy." Id. He attributed some of her leg pain to depression, for which he prescribed anti-depressant medication and which seemed to help with the leg pain. A.R. 549.

In June 2007, Nandkishore Gurram, M.D., plaintiff's treating cardiologist, reported to Dr. Austen that plaintiff could walk "a mile or two without difficulty." A.R. 555. According to Dr. Gurram, plaintiff's continuing complaints of chest pain were atypical, although the doctor wanted to follow-up with plaintiff in five months. A.R. 556. The cardiologist also noted that plaintiff had "been doing fine" with the stent implantations. A.R. 555.

In finding that plaintiff has the residual functional capacity for a reduced range of light work, the administrative law judge expressly relied on the opinions of the state agency physicians. A.R. 26. He also noted that no medical source, including Dr. Austen, had expressed an opinion of disability. A.R. 27.

Plaintiff specifically disputes this observation, and points to an August 2009 opinion by Dr. Austen in which he states that plaintiff

is "probably disabled" because "it seems improbable that anybody would ever hire her." A.R. 577. This opinion, however, was not before the administrative law judge but was, instead, presented to the Appeals Council.[1] This Court may therefore not consider that opinion in reviewing the sufficiency of the administrative law judge's decision. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

In the view of this Court, the clinical notes and opinions of Dr. Austen, plaintiff's treating physician, as well as the opinions of the state agency physicians, who concluded that plaintiff has the residual functional capacity for a reduced range of light work, provide substantial support for the administrative law judge's finding in this regard. Plaintiff's first assignment of error is without merit.

Plaintiff also contends that the administrative law judge failed to adequately develop the record, particularly in light of the fact that plaintiff was not represented at the administrative hearing. As noted, plaintiff was fully informed of her right to representation, but she affirmatively chose to proceed at the hearing without representation. A.R. 583-84. It is true that, under such circumstances, the administrative law judge has a heightened duty fo develop a full and fair record. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F,2d 1051-52 (6th Cir. 1983). However, review of the administrative record and transcript of the administrative hearing persuades the Court that administrative law judge fulfilled his duty in this regard. Plaintiff specifically contends that the administrative law judge failed to obtain medical records referred to by plaintiff during the hearing. Plaintiff is mistaken. The transcript of the administrative hearing refers to records of plaintiff's cardiologist, a

[1]Plaintiff refers to "Exhibit 43F," *Statement of Errors*, p.6. The exhibit is actually AC-2. A.R. 577.

Dr. "Guttman [phonetic]." A.R. 584. The record in fact includes a report from plaintiff's treating cardiologist, Dr. Gurram. A.R. 555-57. The transcript also refers to plaintiff's podiatrist, "Dr. Barrie [phonetic]," A.R. 586, and the administrative record includes progress notes of Charles M. Perry, D.P.M., for the period February 2005 through April 2006. A.R. 526-27. Moreover, and contrary to plaintiff's contention, the record in fact includes medical evidence dating after 2005.

Finally, plaintiff also appears to contend that the administrative law judge improperly refused to reopen the earlier decision to terminate plaintiff's benefits. However, that decision is not reviewable by this Court. *See Harper v. Sec'y of Health & Human Servs.*, 978 F.2d 260, 262 (6th Cri. 1992).

In short, the Court concludes that the decision of the Commissioner is supported by substantial evidence and conformed in all respects with appropriate controlling standards. That decision must, therefore, be affirmed.

It is therefore **RECOMMENDED** that the decision of the Commissioner of Social Security be affirmed and this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to

the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.* *See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

August 8, 2011

*s/Norah McCann King*
Norah McCann King
United States Magistrate Judge